UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEBRA KELLY, ) <br> ) <br> ) <br> Defendant. ) <br> _____) | Civil No. |

## COMPLAINT

1. The United States of America brings this action on behalf of the United States Department of Veterans Affairs, (the "VA"), an agency of the United States, seeking recovery of monies wrongfully paid to, and for civil penalties against, the defendant Debra Kelly, under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, based upon claims made to the United States in order to obtain payments from the VA for services through 2019.

2. This action arises from the misrepresentations made concerning concrete landscaping classes held by Natural Technologies, Inc. d/b/a NTI Organic Lawn Care Institute ("NTI"), to obtain payments from the VA in reimbursement for their veteran students. (1) Debra Kelly caused NTI to violate the requirement that no more than 85% of their students in a particular class be receiving veteran benefits.  (2) Upon failing to meet the 85/15 ratio, she made misrepresentations to the government that NTI was meeting the ratio, while continuing to bill the VA.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is founded upon 28 U.S.C. §§ 1345 and 1355, and 31 U.S.C. § 3730.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

## PARTIES

5. The United States is the plaintiff in this action on behalf of the VA. The VA is an agency and instrumentality of the United States and its activities, operations and contracts are paid from federal funds.

6. Defendant Debra Kelly is a resident of New Hampshire and is subject to the jurisdiction of this Court.

## THE FALSE CLAIMS ACT

7. The FCA is the primary civil remedial statute designed to deter fraud upon the United States and reflects Congress' objective to enhance the Government's ability to recover losses as a result of fraud against the Government. S. Rep. 99-345 (1986), at 1, as reprinted in 1986 U.S.C.C.A.N. 5266.

8. First, a defendant violates the FCA when it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). As it relates to this case, the term "claim" under § 3729(b)(2) of the FCA includes "(A) . . . any request or demand, whether under a contract or otherwise, for money . . . that . . . (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—(I) provides or has provided

any portion of the money . . . requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money which is requested or demanded." *Id.* § 3729(b)(2).

9. Second, a defendant violates the FCA when it "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Id. § 3729(a)(1)(B).

10. Under the FCA, the terms "knowing" and "knowingly" include "actual knowledge of the information," deliberate ignorance of the truth or falsity of the information, or reckless disregard of the truth or falsity of the information, and require no proof of specific intent to defraud.  31 U.S.C.A § 3729(b)(1)(A),(B).  Congress intended the terms "knowing" and "knowingly" to "reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted."  S. Rep. No. 99-345 (1986), at 21, as reprinted in 1986 U.S.C.A.N. 5266, 5286 (quotations in original.)  "It is intended that persons who ignore 'red flags' that the information may not be accurate or those persons who deliberately choose to remain ignorant of the process through which their company handles a claim should be held liable under the Act." H. Rep. No. 99-660, at 21 (1986) (to accompany False Claims Act of 1986, H.R. 4827). As used in this Complaint, the terms "knowing" and "knowingly" have the meaning ascribed to them by the FCA, as do their derivatives "knowledge," "known," and "knew."

11. The term "material" as used in the FCA, "means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

12. The FCA imposes liability of treble damages plus a civil penalty for each false claim in an amount (as pertinent here) not less than $5,500 and not more than $11,000 for claims submitted prior to August 1, 2016; not less than $10,781 and not more than $21,563 for claims submitted between August 1, 2016 and January 29, 2018, and as appropriately statutorily adjusted for inflation each successive year under the Bipartisan Budget Act of 2015, Pub. L. 114-74, § 701, 129 Stat. 584, 599-601 (2015).  *See* 31 U.S.C. § 3729(a)(1).

## VA EDUCATIONAL BENEFITS PROGRAM

13. The VA administers benefits programs for veterans including the Post 9/11 GI Bill which provide educational benefits to eligible veterans.  This educational assistance includes paying for tuition, housing costs, and other educational costs and fees for veterans of the United States Armed Forces. *See* 38 U.S.C. § 3311.

14. Veterans can receive tuition benefits from the VA, including from non-accredited, non-college degree schools, which monies are paid directly by the VA to such schools. See 38 U.S.C. § 3313(g)(3), h. *See generally* 38 U.S.C. § 3676.

15. Each state is allowed to designate a state approving agency ("SAA") to approve schools to participate in the program. 38 U.S.C. § 3671(a).  New Hampshire's SAA is the New Hampshire Department of Education (the "NH DOE").

**85/15 Rule**

16. A school is ordinarily eligible to receive tuition payments for veteran students in a particular course only if the students receiving VA benefits total no more than 85% of the total amount of students who are enrolled in that course. 38 U.S.C. § 368-A(d)(1).  That is, a school is not normally eligible to receive tuition payments unless at least 15% of the students who are enrolled in the course are not veteran students receiving benefits. 38

4

C.F.R. § 21.4201(a).

17. The amount of tuition a school charges to a veteran may not exceed the tuition that is charged to non-veteran students. 38 C.F.R. § 21.4210(d)(4)(i). Failure to meet this requirement is sufficient alone to disqualify a school and render it ineligible from receiving payments. 38 U.S.C. § 3690(a)(1). Additionally, non-veteran students receiving discounts to their tuition cannot be counted toward the 15% part of the 85/15 ratio. 38 CFR § 21.4201(e)

18. The 85/15 ratio must ordinarily be computed for each course. 38 C.F.R. § 21.4201(e)(1). No VA benefits are to be paid for new veteran students in a class when compliance calculations establish the 85/15 ratio is not satisfied. 38 CFR § 21.4201(g)(1)(i). Indeed, any school that falsely certified compliance with the "tuition rule" or "85/15 rule," may be suspended or disqualified from the federal program. *See* 38 U.S.C. § 3690(b)(3)(A)(ii); 38 C.F.R. § 21.4210(f).

## THE DEFENDANT'S CONDUCT

19. Natural Technologies, Inc. filed Articles of incorporation in 2011. It did business under the name NTI Organic Lawn Care Institute ("NTI"), which purported to be an educational facility providing lawn care training and instruction to students.

20. On December 23, 2013, NTI was first approved by the NH DOE to receive VA tuition assistance funds for the purpose of providing education and training to eligible veterans.

21. Debra Kelly was listed as Vice President and certifying official for NTI on VA forms starting at least in 2018 and through 2019.

22. In 2018 and 2019, Kelly certified veteran students' enrollment at NTI using VA Forms 22-1999. This was required to obtain tuition payment from the VA for those students.

23. From 2018 through 2019, NTI received approximately $1,297,160 in VA funding as follows:

| Year | Students | Funding |
|---|---|---|
| 2018 | 52 | $700,121 |
| 2019 | 46 | $597,039 |
| Totals | 98 | $1,297,160 |

**Violation of the 85/15 Rule**

24. Starting no later than 2018, NTI filled its classes with more than 85% veterans in violation of the 85-15 rule. It also charged non-veterans discounted tuition rates.

25. Kelly certified compliance with the 85-15 ratio requirements in the student enrollment certification, VA Form 22-1999, which she submitted alongside claims for tuition payments for each veteran student receiving VA benefits.  This was required to obtain tuition payments from the VA for those students.

26. The course at NTI approved by the VA for tuition assistance funds was 40 hours long for a tuition amount of $14,900.

27. Starting no later than 2018, NTI failed to fill the classes with at least 15% non-veterans and unlawfully charged less tuition for those non-veterans that did enroll.  It also regularly charged non-veterans substantially less than the price charged to veterans.

28. During NTI's participation in the VA benefits program, the VA conducted compliance reviews of the school.  Kelly concealed NTI's violations of the 85-15 Rule in these surveys including the fact that NTI charged nonveterans reduced tuition.  During these reviews she provided false information to mislead VA auditors.

## COUNT ONE – FALSE CLAIMS ACT

29. The allegations of paragraphs 1 through 28 are realleged and incorporated by reference.

30. Starting no later than 2018 through 2019, Kelly (1) knowingly presented, or caused to be presented false or fraudulent claims for payment or approval or (2) knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims paid or approved by the government.

31. The claims for payments from the United States were false or fraudulent because the claims for payment were for classes that violated the 85/15 Rule. Additionally, defendant certified its compliance with the 85/15 Rule. Absent the false statements made by and caused by Kelly, the United States would not have made payments to NTI for these services or would have made lesser payments.

32. By virtue of the said false or fraudulent claims, the United States has incurred damages and, therefore, is entitled to treble damages under the FCA, plus a civil penalty for each violation of the Act.

THEREFORE, the plaintiff United States of America respectfully requests this Court to:

A. Enter judgment for the plaintiff and against the defendant as follows:

   (i) Count One – An amount equal to three times the loss sustained by the United States, plus penalties per false claim or representation, as provided in 31 U.S.C. § 3729(a);

B. Award the United States its costs in this action; and

C. Grant such other and further relief as is just and proper.

                                              Respectfully submitted,

                                              JANE E. YOUNG
                                              United States Attorney

                                    By:  /s/ Raphael Katz
                                              Raphael Katz
                                              Assistant U.S. Attorney
                                              NY Bar No. 4371688
                                              United States Attorney's Office
                                              53 Pleasant Street
                                              Concord, NH  03301
Dated: September 18, 2024              raphael.katz@usdoj.gov